## WESTERN UNION TELEGRAPH CO. v. HICE et al. (No. 3194.) *

(Court of Civil Appeals of Texas. Texarkana. March 11, 1926. Rehearing Denied March 18, 1926.)

1. **Telegraphs and telephones ☞68(4)—Relationship of daughter-in-law and father-in-law held too remote to infer mental suffering from failure to attend burial because of delay in delivering telegram.**

In absence of notice to telegraph company of special ties of affection existing, relationship of daughter-in-law and father-in-law is too remote to infer mental anguish from failure to attend burial of latter because of delay in delivering telegram.

2. **Telegraphs and telephones ☞68(3)—Sufficient notice held to have been given telegraph company of relationship between addressee in telegram and deceased.**

In action for damages for delay in delivering telegram resulting in plaintiff's failure to attend funeral of her father-in-law, sufficient notice held to have been given defendant of relationship between plaintiff and deceased, though subsequent to original filing of message.

3. **Telegraphs and telephones ☞73(4)—Addressee in death telegram held not negligent as matter of law in failing to attend funeral.**

In action for damages for delay in delivering telegram informing plaintiff of her father-in-law's death, evidence held not to show as matter of law that she was so negligent in failing to attend funeral as to preclude recovery for consequent mental suffering.

4. **Telegraphs and telephones ☞71—$1,000 for mental suffering by addressee in death telegram held excessive, and reduced to $100.**

Award of $1,000 for mental suffering from delay in delivering telegram because of plaintiff's failure to attend funeral of her father-in-law held excessive, and reduced to $100.

5. **Telegraphs and telephones ☞68(5)—Damages for failure of addressee in death telegram to be with daughters at father-in-law's funeral held properly denied where company had no notice.**

Damages for mental suffering from delay in delivering telegram because of plaintiff's failure to be with her daughters at time of her father-in-law's funeral were properly denied, where defendant had no notice in that respect.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Action by Mrs. Daisy Hice and husband against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Modified and affirmed.

Mrs. Daisy Hice, joined by her husband, brought the suit against the telegraph company to recover damages suffered through alleged negligent delay in the delivery of the following message:

"Sherman, Texas, June 19, 1925.
"Daisy Hice, 395 Houston Street, Paris, Texas. Mr. Ford is dead. Answer at once if coming. Come to Sherman. Lewis Ford."

The sender of the message was the son of the deceased. The deceased was the father of the first husband of the addressee, Daisy Hice. The first husband of Mrs. Hice died in 1908, and she married her present husband in 1912. Mrs. Hice did not receive the message until about 11 o'clock a. m., Saturday, June 20, 1925, which was too late for her, as she claims, to attend the burial

of the deceased, which occurred in Sherman at 4 o'clock p. m. of June 20, 1925. The petition seeks damages on account of mental anguish suffered in being prevented "from attending the funeral of her father-in-law and being present to assist the daughters in the preparation for and burial of said Mr. Ford and from attending the funeral herself, and aiding, comforting and· assisting her daughters in the hour of bereavement." The defendant filed a demurrer to the petition and also a general denial, and further specially pleaded contributory negligence. The case was tried before the court without a jury, and judgment was rendered in favor of the plaintiff as follows:

"For one thousand dollars as damages resulting from her failure due to defendant's negligence, to be present at the funeral of her father-in-law, Mr. Ford; no damages being allowed for the failure to be with her daughters on said occasion."

The facts are practically without dispute. The deceased died on Thursday night, June 18, 1925, at Sherman, the place of his residence. At 10:10 o'clock a. m. Friday, June 19, 1925, Lewis Ford, by direction of his niece Mrs. R. W. Sullivan, delivered to appellant's agent at Sherman the message in suit, prepaying the charges for forwarding the same. His niece Mrs. Sullivan gave him the money to pay the charges. At the time of delivering the message Lewis Ford stated to the agent as follows:

"When I delivered the message to the agent I said I wanted to send a telegram to Paris to my sister-in-law that my father was dead, and to come if she could. That is all that I said at that time. I remember that part of it. I believe I said it that way. There was nothing else said then as to the purpose of the message or as to the relationship of the parties."

The message was promptly forwarded to Paris, and at 10:30 o'clock a. m. it was handed to the messenger boy for delivery. The messenger boy failed to find, as he says, "395 Houston street," and did not deliver the message to the addressee. The messenger boy returned to the office and reported to the agent at 11 o'clock a. m. The agent at once sent a service message to the agent at Sherman reading:

"Unable to deliver your 395 Houston street. No such number. Give better address."

Upon receipt of the service message the agent at Sherman called Mr. Lewis Ford. Mr. Ford and his niece Mrs. Sullivan came to the office about 1 o'clock p. m. in response to the call of the agent. Lewis Ford informed the agent that he did not know of any other address. Mrs. Sullivan then told the Sherman agent, as she testified, that the address of the addressee "was, she thought, 295 West Houston street," stating at the same time that if it was not at that place "to see if it could not be actually gotten at the post office." She further stated, as she said, to the agent, "If Mamma does not get that message it would almost kill her." The Sherman agent does not agree that Mrs. Sullivan gave the address stated by her or made the statement referred to. The Paris agent mailed the message to Mrs. Hice, and she received it in due course of mail on Saturday at about 11 o'clock a. m. The agent at Sherman testified that Lewis Ford directed her to have the Paris agent mail the telegram. Lewis Ford testified that he did not request or direct it to be mailed. As an admitted fact there is a "West Houston street" and an "East Houston street" in Paris. The city directory so shows. There is no "Houston street" as such. Mrs. Hice lived at No. 395 "West Houston street." The messenger boy went to "East Houston street," but did not go to "West Houston street." Mrs. Hice made no effort to go to the funeral after receiving the message, but she said she could and would have gone on Friday. She said:

"I had no way of going to Sherman. Mr. Hice was not at home, and I could not have gone very handily on Saturday. I made no effort to go to Sherman on Saturday afternoon. I did not think it was any use."

Mrs. Hice had no information as to the date or time of day of the funeral. The funeral services commenced at the home at 2:30 o'clock p. m. Saturday, and the interment at the graveyard occurred about 3:30 o'clock. It was about three miles from the home to the cemetery.

It was proven that a regular passenger train ran daily from Paris to Sherman, leaving Paris at 11:30 o'clock a. m. and arriving at Sherman at 2:30 o'clock p. m. A regular public bus ran daily from Paris to Sherman, leaving Paris at 11:30 o'clock a. m. and at 1:30 o'clock p. m., arriving in Sherman at 2:15 o'clock p. m. and at 4:15 o'clock p. m. As to whether or not Mrs. Hice knew of the above means and opportunity of going to Sherman rests alone upon the inference from the following statement made by her:

"If I had received the message on Friday I could and would have gone to Sherman in Mr. Whitlow's car without any expense to me. They were up here, and I could have gone back with them. I do not know it to be a fact that if I had gotten the message at any time up to 12 o'clock on Saturday that I could have gotten a car and got to Sherman before Mr. Ford was buried. I don't know whether I could or not."

Elmer L. Lincoln, of Texarkana, for appellant.

W. L. Willie and J. M. Braswell, both of Paris, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The propositions of appellant present, in effect, the points in view that: (1) The relationship of daughter-in-law and father-in-law is too remote to legally authorize a

recovery for mental suffering for failure to attend the burial; (2) the addressee of the message was guilty of negligence proximately resulting in her suffering in failing to go to Sherman after receiving the telegram, having the means and opportunity to do so; (3) the amount of the verdict is excessive. It is the settled rule that, in the absence of notice to the telegraph company of special ties of affection existing, the relationship here shown is too. remote to infer the fact of mental anguish. Telegraph Co. v. Coffin, 30 S. W. 896, 88 Tex. 94; Tel. Co. v. Wilson, 75 S. W. 482, 97 Tex. 22; Tel. Co. v. Gibson (Tex. Civ. App.) 39 S. W. 198; and other cases. But in the instant case sufficient notice was given, although subsequent to the original filing of the message, yet in ample time, while the telegraph company was transmitting and delivering the message. Tel. Co. v. Allen (Tex. Civ. App.) 146 S. W. 1066.

[3] We believe negligence of appellee as a pure matter of law could not be predicated upon the evidence. There is room in the evidence to raise an open issue of fact as to whether or not the appellee was negligent to such an extent as to preclude a recovery.

[4] The amount of recovery, we believe, is excessive in the particular circumstances. The mental suffering in consequence of the death of Mr. Ford is entirely aside from any probable mental suffering from the mere failure to be present at the funeral services and view the interment. The case has not the element of injury of being deprived of the opportunity to be with or attend Mr. Ford before his death. Telegraph Co. v. Bouchell, 67 S. W. 159, 28 Tex. Civ. App. 23; Tel. Co. v. Armstrong (Tex. Civ. App.) 207 S. W. 592; Tel. Co. v. Goodson (Tex. Civ. App.) 217 S. W. 183. The amount of $100 is deemed reasonable in the circumstances. The judgment is accordingly modified so as to allow a recovery of $100, and as modified is in all things affirmed, the appellee to pay costs of the appeal.

[5] Appellee has filed cross-assignment of error in refusal to allow damages for failure to be with her daughters. No appeal was taken. Even so, the court committed no error in the ruling. The company had no notice in that respect.

Modified and affirmed.